UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAPHAEL DANIEL-JORDAN HEARN,

      Petitioner,     Case No. 2:17-cv-13219
                Hon. Denise Page Hood
v.

SHERMAN CAMPBELL,

      Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, (3) AND DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

   This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Raphael Daniel-Jordan Hearn was convicted after a jury trial in the Wayne Circuit Court of first-degree murder, MICH. COMP. LAWS § 750.316, two counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and commission of a felony with a firearm. MICH. COMP. LAWS § 750.227b. The petition raises one claim: insufficient evidence was presented at trial to sustain Petitioner's convictions. The Court will deny the petition because the claim is without merit. The Court will also deny a certificate of appealability and deny permission to appeal in forma pauperis.

## I. Background

The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendants plotted revenge against [Kenneth] French and his family for French's role in the shooting of Hearn three months earlier at a motorcycle club. On July 1, 2014, defendants located French at [Toni] Holt's house, where French's two-year-old daughter Kamiya [Gross] was playing outside with Holt's 12-year-old daughter Chelsea [Lancaster]. French and Holt were sitting on the front porch while the children played. Defendants first drove past the house in a white vehicle and then drove behind the house and stopped. Defendant [Raymone] Jackson got out of the vehicle and, after approaching French from the side of Holt's house, started shooting. Kamiya, Chelsea, and French were shot. Jackson then returned to the waiting vehicle and was driven away from the crime scene. Kamiya died from a gunshot to the head. Chelsea and French were hospitalized for multiple gunshot injuries.

*People v. Hearn*, 2016 WL 6127659, at *1 (Mich. Ct. App. Oct. 18, 2016).

Following his conviction and sentence, Petitioner filed an appeal of right. His appellate counsel filed a brief on appeal, raising what now form his sole habeas claim:

> I. Defendant-Appellant is entitled to a new trial where there was insufficient evidence to find for the convictions.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *Id.* Petitioner subsequently filed an application for leave

to appeal in the Michigan Supreme Court, raising the same claim. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. *People v. Hearn*, 898 N.W.2d 606 (Mich. 2017)(Table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that

principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103 (internal quotation omitted).

### III. Analysis

Petitioner asserts that constitutionally insufficient evidence was presented at trial to sustain his convictions. He asserts that the evidence at trial indicated that he was merely present at the scene of the shooting and failed to demonstrate that he aided and abetted the shooter.

4

After reciting the controlling constitutional standard and the elements of

the offenses, the Michigan Court of Appeals rejected the claim as follows:

> Contrary to defendant Hearn's argument, the evidence was sufficient to support his convictions. The record evidence demonstrated a close relationship between Jackson and Hearn. And after Hearn was shot at a motorcycle club, Hearn held a grudge against French for failing to shoot the person who had shot him. The jury could infer that Jackson and Hearn discussed this grudge from the references in their text messages, including: "I been hearing dat 3rd shit." French testified at trial that he was known as "Third" or "3rd." In addition, Jackson and Hearn exchanged texts regarding Hearn's frustration about the shooting and his desire for retaliation. From Jackson's collective references in these texts to Hearn, such as "we gon smoke dem niggas fasho," and "we gonna get em," the jury could infer that both Jackson and Hearn planned to retaliate against French together. But, as Jackson texted to Hearn, the plan was constrained by Jackson's tether. After Jackson's tether was removed, Hearn returned to the Detroit area from Chicago, where he had been staying. The jury could also infer from his text messages about "the carbine" and "the special" that he was going to get a gun to carry out their plan.

> Further, the record evidence showed that defendants were together on the day of the shooting, including that they were riding in the same white vehicle that was seen by witnesses at the crime scene immediately before and immediately after the shooting. And after defendant Jackson left the vehicle on foot to approach and shoot the victims, it was noted that the driver of the white, getaway vehicle was wearing a hat. Defendant Hearn had been seen wearing a hat earlier that day. From these facts, the jury could infer that Hearn was Jackson's getaway driver. And, shortly after leaving the crime scene, video surveillance footage recovered from the Detroit Riverwalk depicted suspects matching the description of defendants, including their clothing, white vehicle, and defendant Hearn's very distinct walk, walking

together by the river. In light of the fact that the gun used in the shooting was never recovered, the jury could infer from this evidence that defendants disposed of the weapon during their walk along the river. Viewing all the evidence in a light most favorable to the prosecution, there was sufficient evidence for the trier of fact to conclude that defendant Hearn aided and abetted Jackson's commission of the crimes.

*Hearn*, 2016 WL 6127659, at *8-9.

The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A reviewing court is not required to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318-19 (internal citations omitted) (emphasis in original). Furthermore, a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

A federal habeas court may not overturn a state court decision that

rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. See *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id*. For a federal habeas court reviewing a state court determination that sufficient evidence was presented, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under AEDPA." *Id*.

The decision of the Michigan Court of Appeals that sufficient evidence was presented at trial to sustain Petitioner's convictions did not involve an unreasonable application of the clearly established Supreme Court standard.

Petitioner was tried under an aiding and abetting theory. The evidence at trial overwhelmingly demonstrated that his co-defendant Raymone Jackson shot and killed two-year-old Kamiya Gross and assaulted Kenneth French and

7

Chelsea Lancaster. The issue presented for the jury as to Petitioner was whether he assisted Jackson in the perpetration of the crimes and shared in or had knowledge of his intent. The evidence presented at trial allowed a rationale finder of fact to conclude beyond a reasonable doubt that he did.

The evidence suggested that Jackson's motive for committing the crime was to avenge French's failure to protect Petitioner during the previous shooting. Dkt. 6-11, at 82. Evidence of Petitioner's text messages following the first shooting demonstrated his intent to seek revenge. Dkt. 6-14, at 142-144.[1] Petitioner flew back into town from Chicago when Jackson was removed from his tether. Dkt. 6-13, at 103-105. Thereafter, Petitioner communicated with Jackson and Marcus Brown about obtaining a firearm. Dkt. 6-14, at 151.[2]

On the day of the crime, Petitioner was seen with Jackson and Brown in a white car, and that same car was seen on Holt's street immediately before the shooting. French testified to seeing both Jackson and Petitioner in the car.

---

[1] Petitioner: "I can't believe these pussies shot me - I got that war ready on repeat. I'm walking with a heavy limp." Jackson: "Lol fuck it brody we gonna get em."

[2] Petitioner: "See if you can get with Frog to swap the carbine 9 out." Jackson: "Swap wat out fah da carbine 9?" Marcus Brown to Petitioner: "How much you give me for the special?" Petitioner to Brown: "150."

Dkt. 6-11, at 119. Before firing the shots, Jackson told French, "Shoes," which was Petitioner's nickname, strongly suggesting revenge as the motive for Jackson's actions. Id. at 78. Jackson then got back into the car with Petitioner and Brown and drove away.

After the shooting witnesses testified to seeing Petitioner together with Jackson in Detroit. Dkt. 6-13, at 121. And after their arrest, Petitioner communicated to Jackson that he was sorry to get Jackson involved in the mess. Dkt. 6-14, at 115.

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. *United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010). While Jackson was the trigger-man, the evidence strongly indicated that Petitioner aided or encouraged Jackson in obtaining a firearm, aided or encouraged Jackson prior to the crime while driving to the scene of the shooting, knew of or shared in Jackson's intent to kill or assault the victims, and aided Jackson in his flight from the scene. The decision by the Michigan Court of Appeals that sufficient evidence supported Petitioner's convictions was not so "insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

As Petitioner's claim is without merit, the petition will be denied.

## IV. Certificate of Appealability

A certificate of appealability will be denied because Petitioner has failed to demonstrate a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2) and (3); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

The Court will also deny permission to appeal in forma pauperis because an appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

s/Denise Page Hood
Chief Judge, U. S. District Court

Dated: December 11, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 11, 2018, by electronic and/or ordinary mail.

s/LaShawn Saulsberry
Case Manager